# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
  **Plaintiff,**

  v.              **Case No. 17-CR-155**

**DAVONTE T. AMOS**
  **Defendant.**

## DECISION AND ORDER

The government charged defendant Davonte Amos with three armed bank robberies, 18 U.S.C. § 2113(a) & (d), and three corresponding violations of 18 U.S.C. § 924(c). Defendant moved to suppress evidence seized from his girlfriend's residence pursuant to a search warrant, arguing that the warrant application failed to establish probable cause that evidence of the robberies would be found there. The magistrate judge handling pre-trial proceedings in this case agreed that defendant had raised a legitimate concern about the validity of the warrant but nevertheless recommended that the motion to suppress be denied under the good faith doctrine.

Defendant objects. My review is de novo. Fed. R. Crim. P. 59(b).

**I.**

On June 6, 2017, the government obtained a criminal complaint alleging that defendant robbed the Wells Fargo Bank in West Allis, WI on May 9, 2017, and the PyraMax Bank in West Allis, WI on May 31, 2017. (R. 1; R. 37-1 ¶¶ 5, 15, 30.) The court issued an arrest warrant that day, but defendant was not immediately apprehended. (R. 37-1 ¶ 5.) On July 26, 2017, the Oostburg State Bank in Oostburg, WI, was robbed by two men, believed to be defendant and

Travis Oakley. (R. 37-1 ¶¶ 31, 45-46.)

On August 1, 2017, FBI special agent Benjamin Hruz applied for a warrant for a residence on West Lisbon Avenue in Milwaukee, seeking permission to search for and seize defendant and any evidence of the robberies on the premises. (R. 37-1 ¶ 1.) Hruz averred that there was probable cause to believe that defendant was then residing at the Lisbon residence. (Id. ¶ 5.)

In support of the request, Hruz detailed the evidence linking defendant to the robberies. First, he averred that on May 9, 2017, an unmasked subject brandishing a black semiautomatic handgun robbed a Wells Fargo branch in West Allis. (Id. ¶ 7.) A bank employee, who was not working at the time of the robbery, subsequently viewed a photograph of the robbery suspect and immediately identified him as defendant. (Id. ¶ 10.) Hruz also matched a booking photo of defendant to a photo of the suspect (id. ¶ 12) and confirmed, through cell site records obtained pursuant to a court order, that defendant's phone was in close proximity to the bank around the time of the robbery (id. ¶ 15).

Second, Hruz averred that on May 31, 2017, two subjects robbed a PyraMax Bank branch in West Allis. (Id. ¶ 19.) Law enforcement was able to identify a female who entered the bank, acting suspiciously, just before the robbery, as Lonese Riley. Riley subsequently admitted that defendant instructed her to enter the bank to see how many people were there, before he and the other man entered to commit the robbery. (Id. ¶ 24.) A cooperating defendant also supplied information regarding defendant's acquisition of a gun and a wig for use in the robbery and the identity of the second suspect. (Id. ¶ 25, 28.) This cooperator also recognized defendant as the Wells Fargo robber based on footage shown on television. (Id. ¶ 29.)

Third, Hruz averred that on July 26, 2017, two men robbed the Oostburg State Bank in Oostburg, WI. (Id. ¶ 31, 33.) Law enforcement located the vehicle used by the robbers (id. ¶ 36), then obtained a search warrant for a residence in Sheboygan, WI associated with the person who rented that car, locating a notebook which appeared to contain the same type of paper as the Oostburg robbery demand note, as well as packaging for a pair of Nike flip flops like those worn by one of the robbers (id. ¶ 39). The person who rented the car stated that it had been taken by Oakley and a man she identified as "KD." (Id. ¶ 41.) She further indicated that she had heard about the robbery and was concerned that Oakley and KD had committed the crime using her rental car. (Id. ¶ 41.) Another occupant of the Sheboygan residence indicated that KD had been staying there, that he talked about robbing a bank, and that he carried a black semiautomatic handgun. (Id. ¶ 42.) Based on the residents' descriptions and a photo, officers believed KD was defendant. (Id. ¶ 43-44.) Officers arrested Oakley on July 28, 2017, and he admitted that he went into the bank with KD and identified KD as defendant from a photo. (Id. ¶¶ 45-46.)

Finally, regarding the Lisbon residence, Hruz averred:

> 49. On the evening of July 28, 2017, law enforcement surveilled Amos leave the residence located at 9xxx W. Lisbon Avenue in Milwaukee, Wisconsin, and enter a 2015 Chrysler 200, gray in color, license plate 597YTK, operated by an unidentified female driver. The car is registered to [M.H.]
>
> 50. Then, on July 31, 2017, around 11:30 a.m., Amos was observed leaving the house and entering the passenger door of the same Chrysler 200. Then, at 2:30 p.m. on July 31, 2017, he was observed exiting the passenger seat of the Chrysler and entering the front door of 9xxxx W. Lisbon Avenue in Milwaukee. The Chrysler then departed the area.
>
> 51. According to Oakley, Amos' girlfriend resides at the aforementioned residence on W. Lisbon Avenue.

(Id. ¶¶ 49-51.)

3

The magistrate judge issued the warrant, and on execution agents found a number of items linking defendant to the robberies, including a gun, a baseball hat, and currency. (R. 46 at 1, 3.) Agents also located defendant within the residence, but he was able to escape. He was later arrested on August 28, 2017. (Id. at 3.)

**II.**

Warrants may issue only on a showing of probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. U.S. Const. amend. IV. When an affidavit is the only evidence presented to the issuing magistrate, the validity of the warrant rests solely on the strength of the affidavit. United States v. McMillian, 786 F.3d 630, 639 (7th Cir. 2015).

"Probable cause exists when the supporting affidavit presents a total set of circumstances which create a 'fair probability' that a search will uncover evidence of a crime." United States v. Haynes, 882 F.3d 662, 665 (7th Cir. 2018). The reviewing court decides whether the issuing magistrate had a "substantial basis" for concluding that there was probable cause. Id. A magistrate's determination of probable cause will be given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated. United States v. Quintanilla, 218 F.3d 674, 677 (7th Cir. 2000). The reviewing court "must keep in mind that doubtful cases should be resolved in favor of upholding the warrant." Id.

Even if the affidavit fails to establish probable cause, suppression is inappropriate if the executing officer relied in good faith on the magistrate's decision to issue the warrant. See

United States v. Leon, 468 U.S. 897, 922 (1984). The officer's decision to obtain a warrant creates a presumption that he conducted the search or seizure with an objectively reasonable belief that his actions were lawful. United States v. Clark, 668 F.3d 934, 941 (7th Cir. 2012). To rebut this presumption, the defendant must show that: (1) the issuing judge wholly abandoned his neutral, detached judicial role; (2) the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; or (3) the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Id. at 942. Where the defendant relies on the third alternative, the court:

> will admit the evidence unless: (1) courts have clearly held that a materially similar affidavit previously failed to establish probable cause under facts that were indistinguishable from those presented in the case at hand; or (2) the affidavit is so plainly deficient that any reasonably well-trained officer would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.

United States v. Koerth, 312 F.3d 862, 869 (7th Cir. 2002) (internal quote marks omitted).

**III.**

Before the magistrate judge, defendant acknowledged that the affidavit may establish probable cause that he robbed the banks but argued that this did not authorize the search of his girlfriend's home.[1] He noted that the Seventh Circuit has rejected a categorical rule permitting the search of a suspected criminal's home. See United States v. Wiley, 475 F.3d 908, 916 (7th Cir. 2007); United States v. Whitlow, 339 F.2d 975, 979-80 (7th Cir. 1964). Here, the affidavit failed to establish that he even lived at the Lisbon residence, much less that he

---

[1] Defendant asserted standing to challenge the search as an overnight guest with a reasonable expectation of privacy.

kept evidence of the alleged crimes there. He further argued that no reasonable agent could have believed that the three short paragraphs regarding the nexus with the subject property were sufficient. Finally, he cited a number of cases from the Sixth and Ninth Circuits declining to find good faith.

> The magistrate judge recommended denial based on the good faith doctrine:
>
> In this case, the affidavit in support of the warrant identified the location to be searched and why the agent wanted to search it. The connection between Mr. Amos and the home was established through information from a now co-defendant that Mr. Amos's girlfriend lived at the home and confirmed through surveillance that saw Mr. Amos exit the home on July 28, two days after the third robbery, and saw him leave and then return to the residence on July 31, the day before the submitting the warrant application. As such, the information regarding Mr. Amos' presence at the subject dwelling was timely, fresh, and confirmed by law enforcement. The warrant was therefore not so lacking in probable cause as to render the officers' belief in its existence entirely unreasonable.

(R. 46 at 8-9.) The magistrate judge further noted that the cases defendant cited were factually distinguishable. (Id. at 9-10.) Finally, the magistrate judge noted that the present affidavit, while perhaps lacking in certain details, could hardly be characterized as "bare bones." (Id. at 10, citing United States v. White, 874 F.3d 490 (6th Cir. 2017).) He concluded:

> Moreover, "reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable." Id. at 500. "For instance, vaguely asserting that a suspect had access to rooms in a particular residence will not establish probable cause to search that residence, but providing some factual detail about the residence permits an officer to reasonabl[y] infer that there is factual support for the assertion." Id. In addition to the information that Mr. Amos's girlfriend lived at the home, the affidavit also linked Mr. Amos to the home through surveillance, just two and then five days after the third bank robbery. Although inferences that Mr. Amos was staying at his girlfriend's home or that he might have evidence of his crimes at a home he stayed at just two days after a bank robbery might not support a finding of probable cause, they support this Court's conclusion that the search was objectively reasonable. The Court further concludes that the affidavit made "<u>some</u> connection, regardless of how remote it might have been"—"some modicum of evidence, however slight" — "between the criminal activity at issue and the place to be searched." White, 874 F.3d at 497 (quoting Laughton, 409

6

> F.3d at 749-50) (emphasis in original). Therefore, the affidavit was not bare
> bones and reliance on it was reasonable.

(R. 46 at 10-11.)

## IV.

In his objections, defendant argues that the link between his alleged crimes and the target residence was so bare-bones that it was unreasonable for law enforcement to believe it was sufficient. He further argues that admitting the evidence here would create a precedent allowing law enforcement to search places a person is simply seen visiting some days after allegedly committing a crime. Given the Seventh Circuit's refusal to categorically infer that evidence will be found where a suspected criminal lives, see Wiley, 475 F.3d at 916; Whitlow, 339 at 979-80, law enforcement should have known that more was required here.

Defendant's argument fails to consider the totality of the circumstances that existed at the time of the search and the reasonable inferences that could be drawn from the available facts. Agents developed probable cause that defendant robbed two banks in West Allis, including a positive identification by an employee of Wells Fargo, the admission of an accomplice who acted as a scout at PyraMax, and information from a cooperating defendant regarding both crimes. Based on this information, agents had already obtained a warrant for defendant's arrest by the time he allegedly robbed the Oostburg bank. After that crime, agents traced the car used by the robbers to a residence in Sheboygan, where defendant had been staying, recovering from that residence a notebook containing the paper used for the demand note and packaging for shoes worn by one of the robbers. Based on information provided by residents of the Sheboygan house it appeared defendant was no longer there. But Oakley, the alleged co-actor in the Oostburg robbery, provided information on where defendant might then

7

be found – at his girlfriend's residence in Milwaukee. Agents surveilled that property, observing defendant leave the house on July 28 (two days after the Oostburg robbery and the same day officers spoke to Oakley) and leave then return on July 31. Based on this evidence that defendant appeared to be staying at the Lisbon residence, agents applied for a warrant to enter that residence to seize defendant and any evidence of the bank robberies.

As the government indicates in its response, defendant does not dispute that the agents had probable cause to search the Lisbon residence to arrest him; rather, his claim is that the court should not have also issued a warrant for evidence of the robberies. It was not unreasonable for the agents to believe that evidence of the robberies would be found at the Lisbon residence. The agents knew that defendant had left some robbery evidence behind at his previous temporary residence in Sheboygan; it was not unreasonable for them to believe that they would find additional evidence at what appeared to be his new resting place in Milwaukee. As the government notes, there was no indication that defendant had some other, more permanent home where he would be more likely to stash his gun, money, or clothing, none of which had been recovered at the Sheboygan residence. See United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006) ("Probable cause does not require direct evidence linking a crime to a particular place. Instead, issuing judges are entitled to draw reasonable inferences about where evidence is likely to be found given the nature of the evidence and the type of offense.") (internal citations and quote marks omitted). "At a minimum, the affidavit was not clearly lacking in indicia of probable cause, but presented a close call. Once the magistrate judge made that call, it was objectively reasonable for the officers to rely on it." United States v. Hodge, 246 F.3d 301, 309 (3d Cir. 2001).

**V.**

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 46) is adopted, and defendant's motion to suppress (R. 37) is denied.

**IT IS FURTHER ORDERED** that this matter is scheduled for counsel-only **STATUS** on **Monday, May 14, 2018, at 11:00 a.m.**

Dated at Milwaukee, Wisconsin, this 1st day of May, 2018.

/s Lynn Adelman
LYNN ADELMAN
District Judge